**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS HOLBERT, KEITH BANCROFT, ROBERT BUTKUS, JONATHAN TARVER, RAYMOND HOLOHAN, ANTHONY OGRODNICK, TIMOTHY WEBER, BRIAN WORLEY, OLE FALDALEN, and WILLIAM BOLDE, JR., individually and on behalf of all persons similarly situated,** | : : : : : : : : : : : | **Civil Action No.: 2:18-cv-02649-CMR** |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| **WASTE MANAGEMENT, INC., WASTE MANAGEMENT OF PENNSYLVANIA, INC., WASTE AWAY GROUP, INC., USA WASTE OF CALIFORNIA, INC., WASTE MANAGEMENT INC. OF FLORIDA, WASTE MANAGEMENT OF ILLINOIS, INC., WASTE MANAGEMENT OF KANSAS, INC., WASTE MANAGEMENT OF NEW JERSEY, INC., WASTE MANAGEMENT OF WISCONSIN, INC., and WASTE MANAGEMENT OF NEW YORK, LLC,** | : : : : : : : : : : : : : : | |
| **Defendants.** | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.    PROCEDURAL HISTORY................................................................................. 3

III.    THE TERMS OF THE SETTLEMENT AGREEMENT .................................. 6

    A.    The Eligible Settlement Collective Members ........................................ 6

    B.    Notice of the Settlement to Eligible Settlement Collective Members ................... 6

    C.    Calculation and Distribution of the Gross Settlement Amount ............................ 7

    D.    Reserve Fund ........................................................................................ 9

    E.    Release of Claims ............................................................................... 10

    F.    Plaintiffs' Counsel's Fees and Expenses ........................................... 11

IV.    ARGUMENT .................................................................................................. 11

    A.    Collective Action Treatment Pursuant To 29 U.S.C. § 216(b) Is Appropriate With Respect To The Eligible Settlement Collective Members .................................... 11

    B.    The Court Should Approve the Settlement Agreement ....................... 12

        1.    The Terms of the Settlement Agreement Are Fair and Reasonable and Resolve a *Bona Fide* Dispute.................................... 14

        2.    The Gross Settlement Amount is Fair and Reasonable ........................... 16

        3.    The Allocation Formula to Eligible Settlement Collective Members is Fair and Reasonable ...................................................................... 18

        4.    The Scope of the Releases Are Fair and the Settlement Additionally Provides an Opportunity for Eligible Settlement Collective Members to Make Their Own Decision About Whether to Participate and Release Their Claims.................................... 20

        5.    The Proposed Service Awards to Plaintiffs are Fair and Reasonable....... 21

        6.    The Proposed Settlement Furthers the Purpose of the FLSA .................. 22

    C.    Plaintiffs' Counsel's Fees and Expenses as Set Forth in the Settlement Agreement Should Be Approved.................................... 23

        1.    Plaintiffs' Counsel's Fees are Fair and Reasonable as Calculated Under the Percentage-of-the-Fund Method ....................................... 24

2.      Plaintiffs' Counsel's Requested Fees Are Also Reasonable Through A
        Lodestar Cross Check ............................................................................. 29

3.      Plaintiffs' Counsel's Costs Should Be Approved ..................................... 33

V.   CONCLUSION ................................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945) ................................................... 27

*Acevedo v. Brightview Landscapes, LLC*, No. 3:13-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) ............................................................................................................................... 28

*Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746  (E.D. Pa. 2016) ................... passim

*Atis v. Freedom Mortgage Corp.*, No. 15-03424 (RBK/JS), 2018 WL 5801544 (D.N.J. Nov 6, 2018) ............................................................................................................................... 12

*Badia v. HomeDeliveryLink, Inc.*, Nos. 2:12–6920 (WJM), 2:12–cv–07097, 2015 WL 5666077 (D.N.J. Sept. 25, 2015) .................................................................................................... 22

*Barrentine v Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ........................................ 15

*Beckman v. Keybank, N.A.*, 293 F.R.D 467 (S.D.N.Y. 2013) ...................................................... 32

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ....................................................................... 24

*Bozac v. FedEx Ground Package Sys., Inc., 3:11-cv-00738-RNC*, 2014 WL 3778211 (D. Conn. July 31, 2014) ................................................................................................................. 20

*Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 09-1248 (MF), 09-4587 (MF), 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ......................................................................... 12, 24, 25, 29

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ............................................................. 13, 23

*Brown v. True Blue, Inc.*, No. 10-514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) .......... 13, 22

*Brumley v Camin Cargo Control, Inc.*, Nos. 08-1798, 10-2461 and 09-6128, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) .................................................................................................. 13, 28

*Buccellato v. AT&T Operations, Inc.*, No. 10-cv-463, 2011 WL 3348055 (N.D. Cal. Jun. 30, 2011) ............................................................................................................................... 32

*Chaverria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ........................... 19

*Chemi v. Champion Mortg.*, No. 05-cv-1238, 2009 WL 1470429 (D.N.J. May 26, 2009).......... 25

*Cooper v. Winking Lizard, Inc.*, No. 1:16CV1513, 2017 WL 4465759 (N.D. Ohio Oct. 4, 2017) ..................................................................................................................................... 17

*Creed v. Benco Dental Supply, Co.*, No. 3:12–CV–01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) ............................................................................................................................... 22

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ........................................... 21, 29

*Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464 (E.D. Pa. 2012) ................................... 13

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................... 32

*Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191 (3d Cir. 2014).......................... 29

*Erie Cty. Retirees Assoc. v. Cty. of Erie, Pa.*, 192 F. Supp. 2d 369 (W.D. Pa. 2002) ................. 29

*Farris v. JC Penny Co. Inc.*, 176 F. 3d 706 (3d Cir. 1999) ........................................................ 13

*Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116 (E.D. Pa. Sept. 27, 2017) ..... 12

*Foster v. Kraft Foods Grp. Inc.*, Nos. 2:09-cv-00453-CB and 2:12-cv-00205-CB, 2013 WL
    440992 (W.D. Pa. Jan. 15, 2013)........................................................................................ 22

*Frank v. Eastman Kodak Co.*, 228 F.R.D 174 (W.D.N.Y. 2005) ................................................. 16

*Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483 (E.D. Pa. 2018) ........................................... passim

*Girsh v. Jepson*, 521 F. 2d 153 (3d Cir. 1975)................................................................................ 14

*Godshall v. Franklin Mint Co.*, No. No. 01-CV-6539, 2004 WL 2745890 (E.D. Pa. Dec.1, 2004)
    ............................................................................................................................................ 22

*Gregg v. Trustees of the Uni. Of Pa.*, No. 09–5547, 2011 WL 11703782, n. 5 (E.D. Pa. June 10,
    2011) .................................................................................................................................... 22

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)........................................ 24, 25

*Henry v. Little Mint, Inc.*, No. 12-cv-3966, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ......... 29

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)........................................................... 23

*In re Abrams*, 605 F.3d 238 (4th Cir. 2010) ................................................................................ 27

*In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006)......................................................... 24

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)........ 16, 17

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)............................................... 10

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ...................................... 18

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)............................................................. 29

*In re Cendant Corp. Prides Litig.*, 243 F.3d 722 (3d Cir. 2002) ................................................. 25

*In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) .......................................................................................................................... 13

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524 (3d Cir. 2009) ................................................ 24

*In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).... 28

In re Ikon Office Sols., Inc. Sec. Litig., 194 F.R.D. 166 (E.D. Pa. 2000) .................................... 18

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) ................................................................................................... 10, 22

*In re Prudential Ins.*, 148 F.3d 283 (3d Cir. 1998) ...................................................................... 24

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143 (D. Colo. May 27, 2009).... 27

*In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ..................................................................................................................... 19

*In re Royal Dutch/Shell Transport Secs. Litig.*, No. 04-374 (JAP), 2008 WL 9447623 (D.N.J. Dec. 9, 2008)...................................................................................................................... 19

*Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420 (N.D. Cal. Jan. 10, 2014) ...... 14

*Kauffman v. U-Haul Int'l, Inc., 5:16-cv-04580*, 2019 WL 1785453 (E.D. Pa. April 24, 2019).. 13, 14

*Keller v. TD Bank*, No. 12-5054, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) ............................ 24

*Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516 (E.D. Pa. 2016) .................................................... 24

*Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244 (D. Mass. June 8, 2017)...................................................................................................................... 14

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ................................... 13, 14, 15

*Mabry v. Hildebrandt, d/b/a Phila. Auto Body*, No. 14–5525, 2015 WL 5025810 (E.D. Pa. Aug. 24, 2015) ........................................................................................................................... 28

*Martin v. Foster Wheeler Energy Corp.*, No. 3:06-cv-0878, 2008 WL 906472 (M.D. Pa. Mar. 31, 2008) .................................................................................................................................. 21

*McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582 (E.D. Pa. June 4, 2014)........... 28

*Mehling v New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) ...................................... 18, 19

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972).............................................................................. 17

*Oh v. AT&T Corp.*, 225 F.R.D. 142 (D.N.J. 2004) ....................................................................... 33

*Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172 (N.D. Ohio May 4, 2018) .. 14

*Owens v. Interstate Safety Serv., Inc.*, No. 3:17-cv-0017, 2017 WL 5593295 (M.D. Pa. Nov. 21, 2017) ........................................................................................................................................ 28

*Pinzon v. Jony Food Corp.*, No. 18-CV-105 (RA), 2018 WL 2371737 (S.D.N.Y. May 24, 2018) .................................................................................................................................................. 31

*Reyes v Carnival Corp., 04-21861-CIV*, 2005 WL 4891058 (S.D. Fla. May 25, 2005) ............. 23

*Rouse v. Comcast Corp.*, No. 14-1115, 2015 WL 1725721 (E.D. Pa. Apr. 15, 2015) ................ 28

*Salinas v. U.S. Xpress Enter., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) .................................................................................................................. 29

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)................................................................ 18

*Symczyk v Genesis HealthCare Corp.*, 656 F.3d 189 (3d Cir. 2011) ..................................... 11, 23

*Tavares v. S-L Distrib. Co., Inc.*, No. 1:13-cv-1313, 2016 WL 1743268 (M.D. Pa. May 2, 2016) .................................................................................................................................................. 22

*Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114 (E.D. Pa. Sept. 27, 2017) ....................................................................................................................... 13, 15, 28

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956 (3d Cir. 1983)...................................... 18

*Wells v. Sullivan*, 907 F.2d 367 (2d Cir. 1990).......................................................................... 27

*Williams v. Alimar Sec., Inc.*, No. CV 13-12732, 2017 WL 427727 (E.D. Mich. Feb. 1, 2017) . 18

*Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011) .................................................................................................................................................. 29

*Williams v. Sweet Home Healthcare, LLC*, No. 16-2353, 2018 WL 5885453 (E.D. Pa. Nov. 9, 2018) ........................................................................................................................................ 24

*Young v. Tri Cnty. Sec. Agency, Inc., 13-cv-5971*, 2014 WL 1806881 (E.D. Pa. May 7, 2014).. 21

*Yuzary v. HBSC Bank USA, N.A., No. 12 civ.3693 (PGG)*, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ........................................................................................................................................ 32

*Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) 32

## **Statutes & Rules**

29 U.S.C. § 202 ............................................................................................................................ 23

29 U.S.C. § 216(b) ............................................................................................ passim

29 U.S.C. § 216(c) ................................................................................................... 13

29 U.S.C. §§ 201 ....................................................................................................... 3

Federal Rule of Civil Procedure 23 ....................................................................... 14

**<u>Other Authorities</u>**

Manual for Complex Litigation § 24.121 at 207) ..................................................... 24

I.    **INTRODUCTION**

After over nine months of hard-fought settlement negotiations, the Parties have resolved this Fair Labor Standards Act litigation on behalf of Plaintiffs and Waste Disposal Drivers who worked for Waste Management.[1] This Motion seeks the Court's approval of the Parties' Settlement Agreement ("Settlement," "Settlement Agreement" or "Agreement"), which is attached as Exhibit 1 to Plaintiffs' Motion.

The Settlement resolves Plaintiffs' claims for unpaid overtime compensation in connection with pre- and post-shift off-the-clock work, as well as off-the-clock work performed during mandatory thirty-minute meal periods, for a gross cash payment of Fourteen Million and Seven Hundred Thousand Dollars ($14,700,000.00) (the "Gross Settlement Amount"). Agreement ¶ 2(M). Specifically, the Settlement provides for an automatic $200.00 payment to every Eligible Settlement Collective Member. In addition, Eligible Settlement Collective Members who submit an Enhanced Payment Claim Form ("Claim Form") and affirm that they worked more than forty hours in a workweek and were not paid for all of that time worked are entitled to a *pro rata* distribution of the remaining Net Settlement Amount based on their Qualifying Workweeks. *Id.* at ¶ 40(a).

Following this Claim Form process, all Eligible Settlement Collective Members will be mailed their Settlement Check by the Settlement Administrator.  By cashing or depositing their Settlement Check, Eligible Settlement Collective Members will release their claims against Defendants. Agreement ¶¶ 19-24. Eligible Settlement Collective Members who choose not to cash or deposit their Settlement Checks will release no claims against Defendants. *Id.*

---

[1] All capitalized terms used in this Memorandum of Law have the meanings ascribed to them as set forth in the Parties' Settlement Agreement.

After a thorough investigation of the facts based on interviews of more than 60 Waste Disposal Drivers across the country, as well as multiple, detailed analyses of nationwide payroll and timekeeping data produced by Defendants, Plaintiffs' Counsel believes that the Settlement represents an excellent result for Plaintiffs and the Eligible Settlement Collective Members, as there is a strong possibility that the Litigation, if not settled now, might not result in any recovery or a recovery far less favorable. *See* Declaration of Shanon J. Carson ("Carson Decl.") ¶¶ 12-17. The Settlement is a fair and reasonable resolution of a *bona fide* dispute, and furthers the purposes of the FLSA by facilitating payment of unpaid wages to Waste Disposal Drivers whose claims might otherwise be too small to be pursued individually.

Accordingly, Plaintiffs respectfully request that the Court issue the accompanying proposed Approval Order: (1) granting approval of the Settlement Agreement pursuant to the Fair Labor Standards Act; (2) finding that the Eligible Settlement Collective Members may proceed as a collective pursuant to 29 U.S.C. § 216(b) for settlement purposes only; (3) appointing Plaintiffs Thomas Holbert, Keith Bancroft, Robert Butkus, Jonathan Tarver, Raymond Holohan, Anthony Ogrodnick, Timothy Weber, Brian Worley, Ole Faldalen, and William Bolde, Jr. as the representatives of the Settlement Collective and approving the proposed service awards in the amount of $10,000 for Mr. Holbert and $2,500 for each of the others; (4) appointing Shanon J. Carson, Sarah R. Schalman-Bergen, and Camille Rodriguez of Berger Montague PC as Plaintiffs' Counsel for the Settlement Collective and approving Plaintiffs' Counsel's Fees and Expenses in the amount of 28% of the Gross Settlement Amount and out-of-pocket expenses not to exceed $50,000.00; (5) appointing Rust Consulting, Inc. as the Settlement Administrator and approving the costs of settlement administration; (6) approving and authorizing the proposed Notice Packet to be sent to all Eligible Settlement Collective Members as set forth in the Settlement Agreement;

(7) dismissing the Litigation on the merits and with prejudice pursuant to the terms of the Settlement Agreement, and granting final judgment; and (8) retaining jurisdiction to oversee and enforce the Settlement Agreement.

Defendants do not oppose this Motion.

## II. <u>PROCEDURAL HISTORY</u>

This litigation concerns Waste Management's alleged unlawful practice of withholding wages, including overtime compensation, from its non-exempt, hourly paid Waste Disposal Drivers in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"). The Litigation concerns Plaintiffs' allegations that Waste Management failed to pay Waste Disposal Drivers when: (a) they performed compensable work prior to mandatory morning meetings; (b) they performed compensable work during meal periods; and (c) they performed compensable work after clocking out post-shift.

On June 22, 2018, Plaintiff Thomas Holbert filed the original Complaint in the Lawsuit alleging nationwide collective action claims for unpaid overtime compensation under the FLSA, as well as claims under the Pennsylvania Minimum Wage Act of 1968 ("PMWA") and for unjust enrichment. (Dkt. No. 1.) On September 7, 2018, Mr. Holbert filed a First Amended Class and Collective Action Complaint ("First Amended Complaint") (Dkt. No. 13), alleging claims for pre- and post-shift off-the-clock work, as well as claims for off-the-clock work during meal periods. Seven additional Waste Disposal Drivers who worked in Pennsylvania opted into the Lawsuit shortly thereafter. An Answer was filed on September 21, 2018. (Dkt. No. 15.)

Plaintiffs' Counsel was thereafter retained by individuals who worked for Waste Management in California, New Jersey, Illinois, New York, Wisconsin, Florida, Alabama, Kansas, and Texas, and provided notice to Defense Counsel that they were prepared to file additional lawsuits but agreed not to do so during the pendency of the Parties' alternative dispute resolution

("ADR") process. In connection with this process, Plaintiffs' Counsel prepared separate draft complaints for each of these individuals and sent them to Waste Management. Carson Decl. ¶ 8.

Consequently, the Parties entered into an agreed ADR process in September 2018 that continued for approximately nine (9) months. This process consisted of extensive discovery, two in-person mediation sessions overseen by an experienced wage and hour mediator, Hunter Hughes, Esq. (*see* http://www.hunteradr.org/), that took place on December 18, 2018 in Atlanta, Georgia, and on March 4, 2019 in Los Angeles, California, and dozens of telephone discussions and negotiations overseen by Mr. Hughes from January to June 17, 2019. *Id.* ¶ 9. The Parties entered into two tolling agreements in order to fully engage in the ADR process in good faith. *Id.* ¶ 10. During this time, the Court also agreed to stay the case pending the Parties' ADR process and mediation. (Dkt. Nos. 25-32.)

The Parties exchanged gigabytes of data and Electronically Stored Information ("ESI"), including policy documents, personnel records, payroll data, Kronos timekeeping records, and other Waste Management documents. The Parties also conferred extensively on ESI issues, including conducting several telephone conferences to discuss the scope and procedures for producing ESI and Waste Management data as well as discussing those issues during the Parties' two mediation sessions. Carson Decl. ¶ 11.

Plaintiffs' Counsel conducted multiple detailed and extensive analyses of a database of payroll and timekeeping records for Waste Disposal Drivers nationwide, including analyzing timekeeping records concerning the clock-in times as compared to shift start times, and records concerning the timekeeping relating to meal periods. Carson Decl. ¶ 12. Plaintiffs' Counsel also conducted over sixty (60) confidential interviews of Eligible Settlement Collective Members regarding their work experiences and off-the-clock allegations who worked in multiple states

across the United States, including Pennsylvania, New Jersey, New York, Illinois, Kentucky, Alabama, Minnesota, and California, among other states. *Id.* at ¶ 13.

At each stage of the ADR process, Plaintiffs' Counsel made a thorough and independent investigation of the facts and law relating to the allegations in the Litigation. In agreeing to the Settlement Agreement, Plaintiffs have considered: (a) the facts developed during the Parties' ADR process and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendants; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. *Id.* at ¶ 14.

The Parties' investigations, substantial discovery, and extensive arms-length negotiations overseen at all times by the mediator, Hunter Hughes, Esq., resulted in the terms and conditions set forth in the Agreement. *Id.* at ¶ 15. Pursuant to the Agreement, Plaintiffs filed a Second Amended Complaint ("SAC") against Defendants on July 3, 2019. (Dkt No. 38.) The SAC alleges violations of the FLSA for off-the-clock work and includes nine (9) additional Plaintiffs and ten (10) Defendants, in addition to Plaintiff Holbert and Defendant WMPA, who were named in the original Complaint and First Amended Complaint. *See* SAC; Agreement ¶ 13. Currently, a total of 21 Opt-In Plaintiffs have joined this Lawsuit in addition to Plaintiffs. (Dkt. Nos. 14, 22, 24, 39.)

The Parties now present the Settlement to the Court for approval. The Settlement offers significant advantages over the continued prosecution of this case: Plaintiffs and the Eligible Settlement Collective Members will each receive significant financial compensation within weeks of the Approval Order's entry, and each individually maintains the decision whether or not to cash or deposit his/her Settlement Check, thereby release his/her claims for unpaid overtime against Defendants. Plaintiffs respectfully request that the Settlement be approved.

### III.   THE TERMS OF THE SETTLEMENT AGREEMENT

#### A.   The Eligible Settlement Collective Members

The Agreement provides that the Eligible Settlement Collective Members include the Named Plaintiffs, any Opt-In Plaintiffs who filed consent-to-join forms in the Litigation, and all individuals who performed work as a Waste Disposal Driver for Waste Management in one of the Eligible Settlement States and performed such work in one or more workweeks between June 22, 2015 and the date of the Order Granting Approval of the Settlement.[2] Agreement ¶ 2(I).There are approximately 30,500 Eligible Settlement Collective Members. *Id.* Importantly, only Eligible Settlement Collective Members who cash or deposit their Settlement Check will release their federal and state wage and hour claims for unpaid overtime; the rights of those who do not cash or deposit their Settlement Check will not be affected. Agreement ¶¶ 19-24; Carson Decl. ¶ 27.

#### B.   Notice of the Settlement to Eligible Settlement Collective Members

Each Eligible Settlement Collective Member will be advised of the Settlement with the proposed Notice Packet documents attached as Exhibit A to the Agreement. The Agreement provides what Plaintiffs believe is the fairest and most practicable procedure for notifying Members of the Settlement – U.S. First Class Mail and email. Under the Agreement, within seven (7) calendar days after the Court's approval of the Settlement, Defendants shall provide to the Settlement Administrator an electronic spreadsheet containing the names, last known addresses,

---

[2] Eligible Settlement Collective Members do not include: (i) Waste Disposal Drivers in the State of California to the extent those drivers' claims were already settled and released in the final judgment entered on November 7, 2017 in the case captioned *Reyes v. Waste Management, Inc., et al.*, Case No. 37-2013-00079232-CU-OE-CTL, in San Diego County Superior Court in the State of California, which certified a settlement class consisting of "all persons who were employed by Waste Management in California in any of their Los Angeles, San Diego Orange County and Southern California Market Areas as non-exempt drivers and driver helpers or similar job titles at any time from January 22, 2011 through July 6, 2016"); and (ii) Waste Disposal Drivers who performed such work for Waste Management in the State of Texas, with the exception of Named Plaintiff Ole Faldalen. *Id.*

last known email addresses, last known telephone numbers, location(s) worked, total number of Qualifying Workweeks, "Random ID" number, and social security number for each Eligible Settlement Collective Member. Agreement ¶ 32.

Within seven (7) calendar days after entry of an Approval Order, the Settlement Administrator shall also establish the Settlement Website, www.wmovertimesettlement.com, which shall contain relevant information including, without limitation, the Settlement Agreement, the Notice Packet, the Approval Order, the Claim Form, and other case documents relevant to the Settlement, as well as a "Frequently Asked Questions" webpage. The Settlement Administrator will also post any new information about the Settlement on the Website as it becomes available. *Id.* at ¶ 2(DD).

Within ten (10) calendar days after the Effective Date, the Settlement Administrator shall mail and email the Court-approved Notice Packet to the Eligible Settlement Collective Members. *Id.*at ¶ 36, Ex. A. The Members shall have forty-five (45) days to submit an Enhanced Payment Claim Form (the "Claim Form Deadline") in order to qualify to receive an amount greater than the automatic Standard Payment of $200.00. *Id* ¶ 37. By submitting an Enhanced Payment Claim Form, the Eligible Settlement Collective Member shall represent that they worked "off-the-clock" unpaid overtime hours. Enhanced Payment Claim Forms may be submitted via regular mail, email, facsimile, or online through an electronic signature service on the Settlement Website. Enhanced Payment Claim Forms must be returned to the Settlement Administrator so that they are postmarked no later than the Claim Form Deadline. *Id*.

### C.    Calculation and Distribution of the Gross Settlement Amount

The maximum total amount to be paid by Defendants as part of the Settlement (the "Gross Settlement Amount") is $14,700,000.00. *Id.*at ¶ 2(M). Pursuant to the Agreement, seven (7) calendar days after the Approval Order, Defendants shall deposit the Gross Settlement Amount in

the Qualified Settlement Fund established by the Settlement Administrator. *Id.* ¶ 28.

The Gross Settlement Amount includes amounts to cover: (1) service awards to Named Plaintiff Holbert in the amount of $10,000 and the other Named Plaintiffs in the amount of $2,500 each for their efforts in bringing and prosecuting this matter; (2) the payment of Attorneys' Fees and Expenses in the amount of 28% of the Gross Settlement Amount (*i.e.*, $4,116,000), which will compensate Plaintiffs' Counsel for all work performed in the Litigation to date plus all work remaining to be performed, including, but not limited to, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Lawsuit; (3) reimbursement of Plaintiffs' Counsels' out-of-pocket expenses in an amount not to exceed $50,000.00; (4) Employer Payroll Taxes associated with the Settlement Awards, to be calculated later by the Settlement Administrator; (5) a Reserve Fund of $25,000 to account for disputed, belated, or unexpected payments to Eligible Settlement Collective Members after Settlement Awards have issued; and (6) Administration Costs invoiced by Rust Consulting, Inc., not to exceed $125,000. *Id.* ¶ 2(Q).

After subtracting these amounts from the Gross Settlement Amount, the balance of the Gross Settlement Amount (*i.e.*, the "Net Settlement Amount") shall be used to calculate Settlement Checks for each Eligible Settlement Collective Member. First, each cEligible Settlement Collective Member will automatically receive a Standard Payment of $200.00. *Id.* at ¶ 40(a). Eligible Settlement Collective Members will also have an opportunity to receive an Enhanced Settlement Award by completing and submitting a Claim Form within forty-five (45) days of the mailing of the Notice Packet. *Id.* ¶¶ 2(E), 37, 40(b). If an Eligible Settlement Collective Member submits a timely Claim Form, he/she will receive an Enhanced Settlement Award consisting of his/her *pro rata* portion of the Net Settlement Amount (minus the Standard Payments) as follows:

     i.    Each Qualifying Workweek shall be assigned one settlement share, except that any Eligible Settlement Member who worked twelve or fewer Qualifying Workweeks shall be assigned zero settlement shares and shall only receive the Standard Payment ($200.00);

    ii.    The total number of settlement shares identified in paragraph (i) above will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure.  That figure will then be multiplied by each individual's number of settlement shares to determine the Enhanced Payment for each individual.

*Id.* ¶ 40(b). These award determinations will be based on Waste Management's personnel and payroll records.

Settlement Checks will be negotiable for one hundred fifty (150) days from the date they are initially mailed ("Acceptance Period"). *Id.* at ¶¶ 2(C), 45. When 90 days of the 150-day Acceptance Period has expired, the Settlement Administrator will mail and email (to the extent an email address is available) a reminder to those Settlement Collective Members who have not yet cashed their checks to inform them of the 150-day deadline. *Id.* at ¶ 45, Ex. D.  At any point in the Acceptance Period, the Settlement Administrator shall have the authority to stop payment on a lost check and issue a new check to an eligible Settlement Collective Member upon request. *Id.* Following the end of the Acceptance Period the amounts resulting from any uncashed checks will be returned to Waste Management, which makes sense here because Waste Management will receive no releases of claims from individuals who choose not to cash or deposit their Settlement Check. *Id.* at ¶ 47.

**D.     Reserve Fund**

The Parties have agreed to reserve $25,000.00 from the Gross Settlement Amount solely for the purpose of preserving these funds to account for disputed, belated, or unexpected payments to Eligible Settlement Collective Members after Settlement Checks have issued. *Id.* at ¶ 39. The Reserve Fund shall be held by the Settlement Administrator for a period of one hundred (100) days

after the Acceptance Period. In the event that any funds remain in the Reserve Fund following this period, such funds shall be sent to Community Legal Services of Philadelphia[3] as a *cy pres* recipient agreed to by the Parties, subject to the Court's approval. *Id.*

### E.      Release of Claims

In exchange for the Settlement benefits, Eligible Settlement Collective Members who deposit and/or cash their Settlement Checks shall simply release the Releasees from all wage and hour claims under federal or state law that were brought, or could have been brought, in the Litigation during the Relevant Time Period. Specifically, Eligible Settlement Collective Members release, to the extent permitted by law, any and all wage and hour FLSA claims, known or unknown, contingent or accrued, against the Releasees, arising under the FLSA and/or state wage and hour law from the claims in, or the claims that could have been pleaded in, the Second Amended Complaint in the Lawsuit herein during the Relevant Time Period. Agreement ¶¶ 19-24.

---

[3] Community Legal Services of Philadelphia ("CLS") is a non-profit, legal aid law firm that provides the highest quality legal assistance to low-income Philadelphia residents who cannot afford legal counsel. With the help of legal services organizations and community groups, CLS challenges policies and practices that cause hardship to low-income people throughout Philadelphia, where many of the class members worked. *See* www.clsphila.org.  Courts in the Third Circuit routinely approve distributions to *cy pres* recipients, such as CLS. *See In re Baby Products Antitrust Litig.*, 708 F.3d 163, 172 (3d Cir. 2013) ("When excess settlement funds remain after claimants have received the distribution they are entitled to under the terms of the settlement agreement, there are three principal options for distributing the remaining funds —reversion to the defendant, escheat to the state, or distribution of the funds *cy pres.* Among these options, *cy pres* distributions have benefits over the alternative choices.  [ . . .] *Cy pres* distributions also preserve the deterrent effect, but (at least theoretically) more closely tailor the distribution to the interests of class members, including those absent members who have not received individual distributions."). The objectives of CLS are closely aligned with the interests of Eligible Settlement Collective Members, and utilizing a *cy pres* is the best option for the remaining funds. *See, e.g.*, *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at *11 (E.D. Pa. July 16, 2009) (approving provision for the charitable donation of unclaimed funds that amount to less than $50,000).

### F.     Plaintiffs' Counsel's Fees and Expenses

Pursuant to the Settlement Agreement, Plaintiffs' Counsel seeks 28% of the Gross Settlement Amount ($4,116,000) for reimbursement of attorneys' fees, plus expenses not to exceed $50,000.00. These amounts are intended to compensate Plaintiffs' Counsel for all work performed in this lawsuit as well as all expenses incurred (which are currently $46,064.68). Agreement ¶ 29(b); Carson Decl. ¶ 73.

## IV.   ARGUMENT

### A.     Collective Action Treatment Pursuant To 29 U.S.C. § 216(b) Is Appropriate With Respect To The Eligible Settlement Collective Members

The FLSA allows workers to bring an action on an individual basis or a collective basis for himself or herself and in a representative capacity for "other employees similarly situated." 29 U.S.C. § 216(b). FLSA certification, and settlement of an FLSA collective action is different from a class action under Rule 23. *See Symczyk v Genesis HealthCare Corp*., 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013) (noting that "[a]bsent from the text of the FLSA is the concept of 'class certification'"; thus, use of "the vernacular of the Rule 23 class action" is inapposite to FLSA collective actions and "may have injected a measure of confusion" into FLSA jurisprudence). Here, the Parties have stipulated that, for settlement purposes only, Plaintiffs and the Eligible Settlement Collective Members are so similarly situated.

Plaintiffs' respectfully request that the Court approve the Parties' stipulation to collective action treatment, certify this group for collective action treatment with respect to this Settlement, and authorize that notice be issued to all Eligible Settlement Collective Members to permit them the opportunity to participate in the Settlement and cash their Settlement Check. *See, e.g., Galt v. Eagleville Hosp.,* 310 F. Supp. 3d 483, 492-93 (E.D. Pa. 2018) (Rufe, J.) (finding opt-in members of FLSA collective to be similarly situated for purposes of settlement).

The Eligible Settlement Collective Members have substantially similar job requirements in performing the jobs of Waste Disposal Drivers and are subject to a common practice, policy, or plan whereby all such individuals worked pursuant to Defendants' common pay practices. As a result of such practices, all such Members are alleged to not have been paid the full and legally mandated overtime compensation for hours worked over forty (40) during the workweek. Resolution of this action would requires inquiry into common facts, including Defendants' common compensation, timekeeping, and payroll practices which are equally applicable to all Waste Disposal Drivers.

The Court should accordingly approve the Parties' stipulation and find that collective action treatment pursuant to 29 U.S.C. § 216(b) is appropriate in this case such that notice should issue to all Eligible Settlement Collective Members. *See, e.g., id.*[4]

## B.     The Court Should Approve the Settlement Agreement

The FLSA provides that employers who violate its provisions "shall be liable to the

---

[4] *See also, e.g., Atis v. Freedom Mortgage Corp*., No. 15-03424 (RBK/JS), 2018 WL 5801544, at * 8 (D.N.J. Nov 6, 2018) (certifying FLSA collective action settlement class of all persons employed by mortgage company as assistant vice president of sales in any of its offices during relevant period, who were not paid required overtime, noting "general benefits of collective actions in lowering costs to plaintiffs and limiting the controversy to one proceeding, as well as the public interest in settling class action litigation"); *Fein v. Ditech Fin., LLC,* No. 5:16-cv-00660, 2017 WL 4284116, at *7 (E.D. Pa. Sept. 27, 2017) (granting final certification for settlement purposes to FLSA Collective Members where plaintiffs showed that the proposed Collective Members clearly had similar circumstances of employment, as all worked in essentially the same position, were subject to the alleged common payroll policies and practices, advanced similar claims, and seek the same relief); *Altnor v. Preferred Freezer Servs., Inc.,* 197 F. Supp. 3d 746, 759-60 (E.D. Pa. 2016) (certifying  FLSA collective for settlement purposes, finding that opt-ins were "similarly situated" where "factual basis of their claims" was similar, they all advance same claims and seek same relief - unpaid overtime wages for shortened meal breaks); *Bredbenner v. Liberty Travel, Inc.,* No. 09-905 (MF), 09-1248 (MF), 09-4587 (MF), 2011 WL 1344745, at *17 (D.N.J. Apr. 8, 2011) (granting final certification of case as a collective action under the FLSA for purposes of settlement: "The factual circumstances underlying the claims of each putative class member are very similar, not disparate. Each held the same job, signed the same employment contract, worked overtime during the relevant class period, received overtime pay pursuant to a common formula, and each claims the same relief under the FLSA.").

employee … affected in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be….” 29 U.S.C. § 216(b). While the FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement, *see, e.g., Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945), FLSA claims may be settled or compromised where a district court approves the settlement pursuant to 29 U.S.C. § 216(b), *see, e.g., In re Chickie's & Pete's Wage & Hour Litig*., No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (citing *Cuttic v. Crozer-Chester Med. Ctr.,* 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012)).[5]

A district court's approval of an FLSA collective action settlement requires only a determination that the compromise reached "'is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions.'" *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *7 (E.D. Pa. Sept. 27, 2017) (citing *Cuttic*, 868 F. Supp. 2d at 466 (quoting *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).[6]

While the United States Court of Appeals for the Third Circuit has not yet specifically detailed the contours of this standard, "district courts in this Circuit have referred to the considerations set forth in *Lynn's Food Stores*." *Chickie's*, 2014 WL 911718 at *2 (citing *Brown v. True Blue, Inc*., No. 10-514, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013); *Kauffman v. U-Haul Int'l, Inc.,* 5:16-cv-04580, 2019 WL 1785453, at *2 (E.D. Pa. April 24, 2019) (citing *Farris v. JC Penny Co. Inc.,* 176 F. 3d 706, 711 (3d Cir. 1999).[7] "Under *Lynn's Food Stores*, a

---

[5] FLSA claims may also be compromised or settled where the Secretary of Labor supervises an employer's payment to employees under 29 U.S.C. § 216(c).  *See, e.g., Chickie's*, 2014 WL 911718 at *2 (citing *Cuttic,* 868 F. Supp. 2d at 466).

[6] *See also Brumley v Camin Cargo Control, Inc*., Nos. 08-1798, 10-2461 and 09-6128, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food*, 679 F.2d at 1354) (collecting cases).

[7] While the Third Circuit has not definitively set out factors for evaluating the fairness of a settlement in an FLSA collective action, some district courts in this Circuit have utilized the factors

district court may find that a proposed settlement resolves a *bona fide* dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute.'" *Chickie's*, 2014 WL 911718 at *2 (citing *Lynn's Food Stores*, 679 F.2d at 1354)). "Typically, Courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness." *Kauffman*, 2019 WL 1785453, at *2. "Additionally, a strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length." *Id.* (citation omitted).

    As set forth below, the proposed Settlement in this case meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. Moreover, the proposed Settlement falls well within the range of possible approval, because it is both substantively and procedurally fair. As such, the Settlement should be approved. Because there are no Rule 23 class action claims in this case, Rule 23 does not apply, and the Court may grant approval to the settlement via a one-step process, rather than holding a final fairness hearing.[8]

### 1. The Terms of the Settlement Agreement Are Fair and Reasonable and Resolve a *Bona Fide* Dispute

---

used for assessing the fairness of class action settlements under Rule 23(e) that are set forth in *Girsh v. Jepson*, 521 F. 2d 153 (3d Cir. 1975). *See, e.g., Altnor*, 197 F. Supp. 3d at 764. As discussed herein, and in Defendants' anticipated Memorandum of Law in Response to Plaintiffs' Motion for Approval of FLSA Collective Action Settlement, the terms of the Settlement also satisfy the fairness requirements of *Girsh*, to the extent any of these are relevant to this FLSA collective action settlement.

[8] *See Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) ("A one-step settlement approval process in FLSA collective actions is appropriate"); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) ("A one-step approval process is appropriate in FLSA settlements that do not include proposed Federal Rule of Civil Procedure 23 class releases.") (collecting cases); *Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *4 (N.D. Cal. Jan. 10, 2014) ("Since Rule 23 does not apply to FLSA actions there is no corresponding requirement that the Court must conduct a hearing to confer final approval of a FLSA settlement.").

A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Lynn's Food*, 679 F.2d at 1355. "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Altnor,* 197 F. Supp. 3d at 763 (citation omitted). Relevant here, "a dispute concerning overtime pay owed to class members is precisely the type of dispute the FLSA is designed to address." *Id.* (citation and quotation marks omitted).[9]

Here, the terms of the Settlement Agreement, the underlying litigation and negotiations, as well as the Settlement approval process itself all demonstrate that a *bona fide* dispute exists regarding the claims asserted – including whether Defendants paid Waste Disposal Drivers all compensation owed; the amount and extent of any work performed pre- and post-shift or during meal periods, and whether any such activities performed constituted compensable work that was not *de minimis*; whether Defendants' actions were willful; and whether liquidated damages would be reasonable. Defendants vigorously deny liability and contend that they properly compensated Waste Disposal Drivers as required by the FLSA. *See* Carson Decl. ¶¶ 42-49. Indeed, Waste Management's concurrently submitted brief details the significant factual and legal disputes between the Parties, as well as Waste Management's position that absolutely no wages are owed. This demonstrates the existence of a *bona fide* dispute in this case. *See, e.g., Tompkins*, 2017 WL 4284114, at *7 (fact that defendant "asserted several defenses to Plaintiffs' claims and the parties disagree on various legal issues" shows that settlement "resolves a bona fide dispute between the

---

[9] Indeed, the FLSA was designed "to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of overwork as well as underpay.'" *Altnor*, 197 F. Supp. 3d at 763 (citing *Barrentine v Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quotation marks omitted)).

parties").

Instead of risking the uncertainty of litigating these issues, the Gross Settlement Amount of $14,700,000.00 provides Eligible Settlement Collective Members with a meaningful recovery of unpaid overtime hours worked, and this amount was carefully negotiated based on a substantial investigation by Plaintiffs' Counsel, and the review and analysis of documents produced by Plaintiffs and Defendants in preparation for mediation. *See* Carson Decl. ¶¶ 11-14, 35-41.

During the course of their ADR process and extensive settlement negotiations, the Parties exchanged a substantial amount of data regarding the Eligible Settlement Collective Members, and performed and exchanged detailed damages calculations. Ultimately, the Settlement the Parties reached reflects what Plaintiffs' Counsel believes to be a fair and reasonable settlement of *bona fide* disputed claims that takes into account the risks that Plaintiffs would face if the case proceeded in litigation. Carson Decl. ¶¶ 17, 54. Moreover, under the terms of the Settlement, if any individual chooses to do so, he or she can decline to participate in the Settlement and is free to pursue his or her own claims. *Id.* The Court should accordingly find that a *bona fide* dispute exists such that approval of the proposed Settlement is warranted in this case.

## 2. The Gross Settlement Amount is Fair and Reasonable

The Gross Settlement Amount of $14,700,000.00 is a fair and reasonable result of significant data analysis and extensive negotiations with a mediator that considered the risks and uncertainties of litigation – the Gross Settlement Amount should accordingly be approved. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and

16

the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). This Settlement represents a reasonable compromise, since, "given the factual and legal complexity of the case, there is no guarantee Plaintiffs would have prevailed. In contrast, the Settlement Agreement assures that Plaintiffs will receive compensation for the alleged violations at issue." *Cooper v. Winking Lizard, Inc.*, No. 1:16CV1513, 2017 WL 4465759, at *3 (N.D. Ohio Oct. 4, 2017).

Here, $14,700,000.00 Gross Settlement Amount is based on an extensive analysis of workweeks that the Eligible Settlement Class Members worked for Waste Management during the Relevant Time Period pursuant to Waste Management's personnel and payroll records. Carson Decl. ¶¶ 42-49. The Gross Settlement Amount is a negotiated compromise amount that the mediator helped the Parties reach, and falls between Waste Management's calculated potential exposure and Plaintiffs' calculated potential damages. Specifically, the Gross Settlement Amount represents between 45% and 64% of Plaintiffs' Counsel's exposure analysis, and is two to six times higher than Defendants' exposure analysis. *Id.* at ¶ 53.

This is an excellent result for the Eligible Settlement Collective Members, especially considering all of the substantial risks of continued litigation which are summarized in more detail below. By way of example, one risk includes the possibility that Plaintiffs would not succeed in obtaining and maintaining FLSA collective action treatment of the entire group of Eligible Settlement Collective Members through trial and appeals. Moreover, a trial on the merits would involve significant risks for Plaintiffs and the Eligible Settlement Collective Members as to both liability and damages. Carson Decl. ¶¶ 42-54. While Plaintiffs and their counsel believe the merits of this Lawsuit are strong, the Litigation would require significant factual development and any verdict at trial could be delayed based on appeals by Waste Management.

Here, the terms of the Settlement Agreement reflect a reasonable compromise of many disputed issues related to the merits as well as collective treatment of the group's claims. As one court noted in considering a proposed FLSA settlement, "both parties face risks if the Court determines the appropriate calculation of overtime pay." *Williams v. Alimar Sec., Inc.*, No. CV 13-12732, 2017 WL 427727, at \*3 (E.D. Mich. Feb. 1, 2017). In this Lawsuit, as in many collective actions, "[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). Based on the foregoing, the Court should accordingly find that the Gross Settlement Amount is fair and reasonable.

### 3. The Allocation Formula to Eligible Settlement Collective Members is Fair and Reasonable

In addition, the proposed allocation formula is fair and reasonable. The Court's "'[a]pproval of a plan of allocation of a settlement fund … is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate.'" *Mehling v New York Life Ins. Co.,* 248 F.R.D. 455, 463 (E.D. Pa. 2008) (citing *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 181 (E.D. Pa. 2000)). As the Third Circuit has explained, "[a] district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.,* 726 F.2d 956, 964 (3d Cir. 1983)). [10] "Generally, a plan that reimburses class members based

---

[10] In *Sullivan,* the Third Circuit noted that it had approved as "fair and within the district court's discretion" a plan of allocation which "was carefully devised to ensure a fair distribution of the settlement fund" and "merely created a structure for ensuring that reimbursement [was] tied to the extent of damages incurred." *Sullivan,* 667 F. 3d at 327 (citation omitted).

on the nature and extent of their injuries is considered reasonable." *Id.* at 463.[11] Notably, "[i]n determining the fairness, reasonableness and adequacy of a plan of allocation, courts give great weight to the opinion of qualified counsel," *see In re Royal Dutch/Shell Transport Secs. Litig.,* No. 04-374 (JAP), 2008 WL 9447623, at *23 (D.N.J. Dec. 9, 2008) (citations omitted).[12]

Here, each Eligible Settlement Collective Member will automatically receive a Standard Payment of $200.00. Agreement ¶ 40(a). In addition, each Member will have the opportunity to submit an Enhanced Payment Claim Form affirming that he or she worked more than forty hours in a workweek and were not paid for all of that time worked, entitling that Eligible Settlement Collective Member to be paid an additional *pro rata* distribution based on his/her total number of workweeks. *Id.* at ¶ 40(b). If approximately fifty percent (50%) of the Eligible Settlement Collective Members submit a valid and timely Claim Form, the average payment to those Eligible Settlement Collective Members will total approximately $530.00, less taxes, though payments to individuals who worked longer tenures may be significantly higher. Carson Decl. ¶ 24. This formula is similar to those found to be fair and reasonable in similar cases, and accordingly warrants approval.[13]

---

[11] *See also In re Remeron Direct Purchaser Antitrust Litig.,* No. 03-0085 FSH, 2005 WL 3008808, at *11 (D.N.J. Nov. 9, 2005) (allocating settlement funds in proportion to damages incurred by each Class member due to defendants' alleged conduct is "inherently reasonable").

[12] "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent Class Counsel." *In re Royal Dutch/Shell Transport Secs. Litig.,* 2008 WL 9447623 at *23 (citation omitted); *see also Chaverria v. N.Y. Airport Serv., LLC,* 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted).

[13] *See, e.g.,* *Gundrum v. Cleveland Integrity Servs., Inc.,* No. 4:17-cv-00055-TCK-JFJ (N.D. Okla. Dec. 4, 2017) (Dkt. No. 102) (granting final approval of settlement agreement with allocation formula comprised of distribution of minimum payment, plus, for those who submit a claim form, a *pro rata* share of net settlement amount based on number of workweeks in which he/she worked in qualifying position for defendant and were paid on daily rate basis) (Dkt. No. 100, at 7-8)); *Lopez v. T/J Inspection Inc.,* No. 5:16-cv-148-M (W.D. Okla. April 12, 2017) (Dkt. No. 59)

**4. The Scope of the Releases Are Fair and the Settlement Additionally Provides an Opportunity for Eligible Settlement Collective Members to Make Their Own Decision About Whether to Participate and Release Their Claims**

The scope of the releases in the Settlement Agreement is also fair and reasonable. Eligible Settlement Collective Members will release only the federal and state *wage and hour* claims that they may have against Releasees arising from the claims in, or the claims that could have been pleaded in, the Second Amended Complaint in the Lawsuit during the Relevant Time Period. *See Galt*, 310 F. Supp. 3d 495. There is no release of prospective rights or non-wage claims.

In addition, as a heavily-negotiated additional benefit to all Eligible Settlement Collective Members, the Settlement Agreement contemplates that is that it is entirely within the discretion of each Eligible Settlement Collective Member whether to release any claims against Waste Management. Specifically, the Notice of Settlement informs all Eligible Settlement Collective Members that it is their sole decision whether to participate, and that if they choose not to deposit or cash their Settlement Check, the will not release any claims against Waste Management and their rights will be unaffected by the Settlement Agreement. Agreement ¶¶ 19-24, 47; Carson Decl. ¶¶ 27, 30.

The Court should accordingly find that the scope of the releases in the Settlement Agreement is also fair and reasonable.

---

(approving a day rate overtime settlement with an allocation formula based on workweeks); *Fenley v. Applied Consultants, Inc.,* No. 2:15-CV-00259-MRH (W.D. Pa. June 17, 2016) (Dkt. No. 65) (same); *McGeary v. North Am. Pipeline Insp.*, LLC, No. 2:14-cv-992-JFC (W.D. Pa. Dec. 22, 2014) (Dkt. No. 97 (same); *Bozac v. FedEx Ground Package Sys., Inc.,* 3:11-cv-00738-RNC, 2014 WL 3778211, at *3, 9 (D. Conn. July 31, 2014) (approving settlement in collective action by current and former FedEx Ground Package line haul service managers alleging misclassification and failure to pay overtime during three year period, "including the release of claims and all other terms, as fair, just, reasonable and adequate as to the settling Parties"; attached Notice of Proposed Settlement of Collective Action Lawsuit explained that the net settlement "shall be divided among Class Members based on the number of full work weeks they worked for FedEx Ground" and "[t]he allocation formula takes in to the account the number of full work weeks you worked.").

**5.   The Proposed Service Awards to Plaintiffs are Fair and Reasonable**

The Court should approve the proposed service awards to the Named Plaintiffs, as the proposed awards are fair and reasonable. Indeed, "courts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citation omitted); *see also Martin v. Foster Wheeler Energy Corp.*, No. 3:06-cv-0878, 2008 WL 906472, at *8-*9 (M.D. Pa. Mar. 31, 2008) (approving incentive award for named representatives). It is particularly appropriate to compensate representative plaintiffs with service awards where, as here, they have actively assisted Plaintiffs' Counsel in their prosecution of the litigation for the benefit of a class. *Young v. Tri Cnty. Sec. Agency, Inc.*, 13-cv-5971, 2014 WL 1806881, at *1-8 (E.D. Pa. May 7, 2014) (approving incentive award for named representative in action alleging violations of the FLSA and PMWA, where named plaintiff released all waivable claims arising out of employment and made significant contributions to the litigation).

Here, the Settlement Agreement provides that the original Plaintiff, Thomas Holbert, may seek the Court's approval for a service award in the amount of $10,000, and Plaintiffs Keith Bancroft, Robert Butkus, Jonathan Tarver, Anthony Ogrodnick, Timothy Weber, Brian Worley, Ole Faldalen and William Bolde, Jr. may each seek a service awards of $2,500, in recognition of their respective services provided to all Eligible Settlement Collective Members, and, in addition, for their broader release of claims that each has agreed to by signing the Settlement Agreement. Agreement ¶¶ 2(Z), 29(a). The Settlement Agreement contemplates that these amounts will be paid in addition to their recovery of unpaid overtime. *Id.* at ¶ 29(a).

These proposed additional payments are justified by the benefits that Plaintiffs' efforts have brought to the group of Eligible Settlement Collective Members as a whole. Plaintiffs took the significant risk of coming forward to represent the interests of their fellow employees. Carson

Decl. ¶ 32. They worked with Plaintiffs' Counsel, providing background information about their employment, about Waste Management's policies and practices, and about the allegations in the Lawsuit. *Id.* They risked retaliation and their reputation in the community and in their field of employment in order to participate in this case on behalf of the Eligible Settlement Collective Members. *Id.* In particular, Plaintiff Thomas Holbert is the individual who first brought the claims to Plaintiffs' Counsel's attention and has worked on this Litigation since its inception. *Id.*[14]

For these reasons, the service award payments proposed in the Settlement Agreement should be approved as fair and reasonable.

### 6.  The Proposed Settlement Furthers the Purpose of the FLSA

Finally, the Settlement Agreement in this matter is consistent with and furthers the policies underlying the FLSA.[15] Here, the Settlement furthers the purposes of the FLSA by only releasing wage and hour claims pleaded or that could have been pleaded in the Second Amended Complaint. Further, as discussed above, only those Eligible Settlement Collective Members who choose to

---

[14] The requested service awards are also in line with those approved in wage and hour collective and class actions throughout the Third Circuit. *See, e.g.*, *Tavares v. S-L Distrib. Co., Inc.*, No. 1:13-cv-1313, 2016 WL 1743268, at *9 (M.D. Pa. May 2, 2016) ($15,000 service award to each named plaintiff); *Badia v. HomeDeliveryLink, Inc.*, Nos. 2:12–6920 (WJM), 2:12–cv–07097, 2015 WL 5666077, at *9 (D.N.J. Sept. 25, 2015) (service awards of $15,000 each to six named plaintiffs); *Creed v. Benco Dental Supply, Co.*, No. 3:12–CV–01571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) ($15,000 service award to named plaintiff); *Foster v. Kraft Foods Grp. Inc.*, Nos. 2:09-cv-00453-CB and 2:12-cv-00205-CB, 2013 WL 440992, at *2 (W.D. Pa. Jan. 15, 2013) (approved service awards of $15,000); *Gregg v. Trustees of the Uni. Of Pa.*, No. 09–5547, 2011 WL 11703782, at *2, n. 5 (E.D. Pa. June 10, 2011) (Rufe, J.) (awarding $10,000 to each of the three Named Plaintiffs); *In re Janney Montgomery Scott*, 2009 WL 2137224 at *12 ($20,000 to each of the three named plaintiffs); *Godshall v. Franklin Mint Co.*, No. No. 01-CV-6539, 2004 WL 2745890, *4 (E.D. Pa. Dec.1, 2004) ($20,000 service award approved to each of two named plaintiffs).

[15] Indeed, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. *See, e.g.*, *Brown*, 2013 WL 5408575, at *3 (finding that settlement agreement frustrated the implementation of the FLSA when it required the plaintiffs to keep the terms of the settlement confidential or risk forfeiting their awards); *see also Altnor*, 197 F. Supp. 3d at 764 (settlement does not impermissibly frustrate the FLSA's implementation, where it "does not contain impermissibly broad release provisions).

cash or deposit their Settlement Check will release any claims. Agreement ¶¶ 19-24.

Further, the Settlement provides Eligible Settlement Collective Members with a substantial recovery for their alleged unpaid overtime that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank*, 324 U.S. at 706 ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...").[16] Because the Settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### C.   Plaintiffs' Counsel's Fees and Expenses as Set Forth in the Settlement Agreement Should Be Approved

Pursuant to the terms of the Settlement Agreement, Plaintiffs request approval of attorneys' fees in the amount of 28% of the Gross Settlement Amount ($4,116,000.00), plus out-of-pocket expenses not to exceed $50,000. To date, Plaintiffs' Counsel have advanced approximately $46,064.68 in expenses related to the Lawsuit, and Plaintiffs' Counsel have also collectively spent approximately 1,578.3 hours on this Litigation. Carson Decl. ¶¶ 55, 59, 73. For the reasons discussed herein, the requested amount of 28% of the Gross Settlement Amount is fair and reasonable and should be approved.

Under Third Circuit law, a Court may evaluate the award of attorneys' fees through two

---

[16] *See also, e.g., Symczyk,* 656 F. 3d at 199 (noting that "§ 216(b) affords plaintiffs 'the advantage of lower individual costs to vindicate rights by the pooling of resources.'") (citing *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989); *Reyes v. Carnival Corp.*, No. 04-21861-CIV, 2005 WL 4891058, at \*3 (S.D. Fla. May 25, 2005) ("Given the relatively small amounts at issue in an individual case seeking overtime compensation, Congress including provisions in the FLSA to encourage litigation, including 29 U.S. C. § 216(b), the 'collective action' provision").

established methods – (1) the lodestar approach, which is the favored approach in common fund cases such as the instant case and proposed Settlement, or (2) the percentage of the recovery approach,. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980). "In the Third Circuit, the percentage-of-recovery method is generally favored in cases involving a common fund and is also the prevailing methodology used by courts in the Third Circuit for wage and hour cases." *Galt*, 310 F. Supp. 3d at 497.[17]

The Third Circuit has explained that the goal of the favored percentage-of-the-recovery method is to ensure "that competent counsel continue to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (quoting Manual for Complex Litigation § 24.121 at 207). Because the Settlement here has resulted in a common fund, from which attorneys' fees will be paid, the percentage-of-the-fund method should be used to calculate the fair and reasonable amount of fees to Plaintiffs' Counsel.

### 1. Plaintiffs' Counsel's Fees are Fair and Reasonable as Calculated Under the Percentage-of-the-Fund Method

In awarding attorney's fees under the FLSA under the percentage-of-recovery method, courts consider the following factors, which are discussed herein:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and

---

[17] *See also, e.g., In re AT&T Corp.*, 455 F.3d at 164; *In re Prudential Ins.*, 148 F.3d 283, 333 (3d Cir. 1998); *Williams v. Sweet Home Healthcare, LLC*, No. 16-2353, 2018 WL 5885453, at *4 (E.D. Pa. Nov. 9, 2018) ("The percentage-of-recovery method is favored if the case involves a common fund or a wage and hour dispute."); *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 533 (E.D. Pa. 2016) ("Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases."); *Keller v. TD Bank*, No. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014); *Bredbenner*, 2011 WL 1344745 at *18-19 (noting that percentage-of-recovery method "is the prevailing methodology used by courts […] for wage-and-hour cases").

(7) the awards in similar cases.

*Gunter*, 223 F.3d at 195 n. 1. The Third Circuit has stressed that these factors "need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005); *see id.* at 303 ("we have generally cautioned against overly formulaic approach in assessing and determining the amounts and reasonableness of attorneys' fees.").

As a general rule, the appropriate percentage awarded to class counsel decreases as the size of the fund increases. *See Bredbenner*, 2011 WL 1344745 at *19 (citing *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 736 (3d Cir. 2002)). The inverse relationship is predicated on the belief that increases in recovery are usually a result of the size of the class and not a result of the efforts of counsel. *Id.* (citations omitted). Here, while substantial, the Settlement does not create a "mega-fund." *Id.*; *see also In re Cendant Corp. Prides Litig.*, 243 F.3d at 736–37. Moreover, the results obtained represent a significant benefit in the face of the many legal and factual risks posed by the Litigation, as discussed above. Specifically, all Eligible Settlement Collective Members will automatically receive a minimum of $200.00, plus, by submitting a one-page Claim Form, Eligible Settlement Collective Members have the opportunity to receive an additional substantial payment based on the number of workweeks the Member worked for Waste Management as a Waste Disposal Driver during the Relevant Time Period. Agreement ¶ 40.

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion Mortg.*, No. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) (internal quotations

omitted).

In this Litigation, the wage and hour issues presented are governed by highly technical federal FLSA law and regulations. Plaintiffs' Counsel focus their practices in this area and have successfully litigated dozens of cases under federal and state wage and hour laws on both a class and collective action basis. Carson Decl. at ¶¶ 3-5, Ex. A, Berger Montague PC Resume. Plaintiffs' Counsel are very experienced and respected in this area and had the requisite skills to perform the legal services required in this complex litigation.

Certifying any class to afford nationwide relief under the FLSA is a significant undertaking in terms of sophistication and risk. In this case, the Parties agree that there are numerous disputed issues of fact and law, including, just for example: (a) whether Plaintiffs and the Eligible Settlement Collective Members worked off-the-clock pre- and post-shift and during meal periods; (b) whether Waste Management's actions were willful; and (c) whether liquidated damages are available. Waste Management vigorously defended this Lawsuit and asserted that the Eligible Settlement Collective Members are not similarly situated for purposes of litigation, and, thus, attaining and maintaining collective action treatment or class certification would not be possible in any given state, let alone on a nationwide basis. Because Waste Management had potentially strong legal and factual defenses to Plaintiffs' claims, even if Plaintiffs were able to obtain and maintain collective action treatment through trial and appeals, an outcome of zero recovery for Plaintiffs and other Waste Disposal Drivers remained possible. Plaintiffs' Counsel accepted these risks, diligently prosecuted the case, and negotiated a meaningful and substantial recovery. Accordingly, this factor also supports Plaintiffs' Counsel's fee request.

It is also important to recognize that Plaintiffs' Counsel agreed to represent Plaintiffs in this Litigation on a contingency fee basis, pursuant to one-third (1/3) contingent fee agreements,

which each of the Plaintiffs signed. Carson Decl. ¶ 60. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id.*

Moreover, the FLSA is a remedial statute designed to protect the rights of workers. *5 A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of the FLSA. Otherwise, highly-skilled counsel would shy away from risky and expensive litigation (like this case) and employees seeking to vindicate their rights would have difficulty obtaining qualified counsel.

In this Litigation, Plaintiffs' Counsel would not have recovered any fees or out-of-pocket costs had they not obtained a settlement or prevailed at trial. Carson Decl. ¶ 72. This factor thus weighs heavily in favor of the requested fees because Plaintiffs' Counsel assumed significant risk of nonpayment when they agreed to represent Plaintiffs on a purely contingency fee basis. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1151 (D. Colo. May 27, 2009) ("A contingent fee . . . is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful.").

By permitting clients to obtain attorneys without having to pay hourly fees, this system

provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. Here, the risks that Plaintiffs' Counsel undertook were real, and the resources that Plaintiffs' Counsel dedicated to this action meant that such resources were not available to other cases. Plaintiffs' Counsel's contingency risk, together with the excellent result that has been achieved on behalf of the Settlement Collective, supports the requested fees of 28% recovery against the Gross Settlement Amount. *See Acevedo v. Brightview Landscapes, LLC*, No. 3:13-2529, 2017 WL 4354809, at *19 (M.D. Pa. Oct. 2, 2017) ("a request of 'one-third of the settlement fund comports with privately negotiated contingent fees negotiated on the open market.'") (quoting *Brumley*, 2012 WL 1019337 at *12).

Finally, Plaintiffs' Counsel's request for 28% of the Gross Settlement Amount is consistent and falls well within the norms of wage and hour class and collective litigation in this Circuit and across the country. Indeed, in the Third Circuit, "the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry v. Hildebrandt, d/b/a Phila. Auto Body*, No. 14–5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases); *see also, e.g., Tompkins,* 2017 WL 4284114 at *10 (approving attorneys' fees equaling 35% of the common fund); *Rouse v. Comcast Corp.*, No. 14-1115, 2015 WL 1725721, at *14 (E.D. Pa. Apr. 15, 2015) (same); *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *6 (E.D. Pa. June 4, 2014) (awarding attorneys' fees which represent 32.7% of the settlement fund).[18] And courts

---

[18] *See also e.g., In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Galt*, 310 F. Supp. 3d at 498 ("As discussed, most fee awards in common fund cases range from 19% to 45% of the settlement fund, with 25% being the median. More specifically, fee awards ranging from 30% to 43% have been awarded in cases with funds ranging from $400,000 to $6.5 million—funds which are comparatively smaller than many common funds."); *Owens v. Interstate Safety Serv., Inc.*, No. 3:17-cv-0017, 2017 WL 5593295, at *3 (M.D. Pa. Nov. 21, 2017); *Brumley*, 2012 WL 1019337 at *12 (collecting cases where attorneys' fees around 30% of settlement funds were found reasonable); *Dunkel v. Warrior Energy Servs., Inc.*, No. 2:13-cv-695-MRH (W.D. Pa. Apr. 18, 2016) (approving a requested fee award of one third of

around the country have "routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases." *See, e.g., Henry v. Little Mint, Inc.*, No. 12-cv-3966, 2014 WL 2199427, at \*15 (S.D.N.Y. May 23, 2014) (noting that request for fees was "in line with decisions from across the country that have awarded one-third or more in wage-and-hour settlements" and citing cases). Likewise, here, the request for fees and expenses should be approved.

### 2. Plaintiffs' Counsel's Requested Fees Are Also Reasonable Through A Lodestar Cross Check

As previously discussed, a lodestar cross check is unnecessary as the fee award is part of a common fund settlement and the *Gunter* factors, discussed above, strongly support Plaintiffs' Counsel's requested fee. Indeed, courts have held that "[e]ven in cases where statutory attorney's fees attach, such as the FLSA, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees [while] [t]he lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains *disfavored*…" *Salinas v. U.S. Xpress Enter., Inc.,* No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127, at \*9 (E.D. Tenn. Mar. 8, 2018) (emphasis in original) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001).[19]

---

the Gross Settlement Amount to the same Class Counsel here in a wage and hour settlement); *Niver v. Specialty Oilfield Sol., Ltd.*, No. 14-cv-1599 (W.D. Pa. Oct. 7, 2015) (approving fee award of 33.33% of the Gross Settlement Amount to class counsel in wage and hour settlement); *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013) (same); *Caudell v. RDL Energy Servs., LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (same); *Bearden v. Precision Air Drilling Servs., Inc.*, No. 2:11-cv-01511-NBF (W.D. Pa. Sept. 26, 2012) (same); *Thomas v. Allis-Chalmers*, No. 2:10-cv-01591-RCM (W.D. Pa. Sept. 11, 2012) (same); *Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at \*10 (E.D. Pa. Sept. 9, 2011) (noting that study of class action fee awards within the Third Circuit found that average attorney's fees percentage in such cases was 31.71% and median award was 33.3%); *Bredbenner*, 2011 WL 1344745 (approving an award of 32.6% of the Settlement fund); *Erie Cty. Retirees Assoc. v. Cty. of Erie, Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)); *Cullen*, 197 F.R.D. at 150 (concluding "that an award of one-third of the Settlement fund is reasonable in consideration of other courts' awards").

[19] *Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191, 199 (3d Cir. 2014) (affirming settlement, overruling objectors, and holding that the district court properly used a percentage-of-the-fund calculation in computing fees despite the fact that the underlying statute provided for

If, however, the Court wishes to conduct a lodestar cross-check, Plaintiffs' Counsel have attached the Declaration of Shanon J. Carson that details the time worked by Berger Montague PC on this Lawsuit, with descriptions of the work performed, along with the hourly billing rates of the legal professionals who were assigned to the Litigation. Carson Decl. ¶¶ 55-61. Specifically, after exercising billing judgment, Plaintiffs' Counsel has spent approximately 1,578.3 hours prosecuting this Litigation, and the current lodestar is approximately $868,716. Carson Decl. ¶¶ 55, 59.

Moreover, it is estimated that by the time this matter is closed, the lodestar will be approximately $1,068,716, to include the time spent by Berger Montague preparing for and attending the approval hearing, communicating with the Named Plaintiffs and Opt-In Plaintiffs, overseeing and supervising the Settlement Administrator, communicating with Eligible Settlement Collective Members who contact Berger Montague with questions and addressing any disputes individuals may raise concerning inclusion in the Settlement, overseeing the settlement administration process, and generally ensuring that the Lawsuit is properly attended to and that all duties to the Eligible Settlement Class Members are served. *Id.*

This lodestar was calculated using Plaintiffs' Counsel's standard hourly rates, which have been approved by courts around the country. *See, e.g.*, *Shaw, et al. v. AMN Services, LLC, et al.*, No. 3:16-cv-02816, Dkt. No. 167 (N.D. Cal. May 31, 2019) (conducting lodestar cross check and holding "[t]he Court further finds that the hourly rates of Class Counsel's co-counsel, Berger Montague PC, also are within the prevailing range of hourly rates charged by attorneys providing

---

attorney's fees to the prevailing party); *see also Altnor,* 197 F. Supp. 3d at 767 ("the lodestar cross-check remains non-dispositive, and its relevance is increasingly challenged by the reality of today's legal practice. …[W]hen many areas of legal practice today are no longer founded on standard hourly rates and more commonly driven by fixed fees, blended rates and contingency fee agreements, the lodestar cross-check has become largely illusory.").

similar services in class action, wage-and-hour cases"); *Scolaro v. RightSourcing, Inc.*, No. 8:16-cv-01083, ECF No. 44 (C.D. Cal. June 26, 2017) (approving Berger Montague's hourly rates); *Devlin v. Ferrandino & Sons, Inc.*, No. 2:15-cv-4976, ECF No. 46 (E.D. Pa. Dec. 9, 2016) (conducting lodestar cross check, approving billing rates, and holding that Berger Montague attorneys "have substantial experience in FLSA cases, and their hourly rates are also within the range charged by attorneys with comparable experience levels for litigation of a similar nature").

Accordingly, the requested fee of 28% percent of the Gross Settlement Amount (*i.e.*, $4,116,000) represents a multiplier of 3.85 on Plaintiffs' Counsel's reasonably estimated lodestar on this case taking into account the future work that Plaintiffs' Counsel must perform in order to bring this case to a successful resolution, as set forth above. Carson Decl. ¶ 61. The proposed attorneys' fee represents a multiplier of 4.74 on Plaintiffs' Counsel's lodestar incurred to date. *Id.*

While this multiplier is on the higher end of what is typically approved in wage and hour settlements, it is within the range of appropriate multipliers, particularly where, as here, a strong settlement was reached early on in the Litigation through the experience and hard work of counsel. *See, e.g.*, *Pinzon v. Jony Food Corp.*, No. 18-CV-105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (approving fees and costs with a multiplier of 5.23 as the Court "recognize[d] the importance of encouraging the swift resolution of cases like this one and avoiding creating a disincentive to early settlement – particularly where such settlement has provided Plaintiff with a substantial and speedy result.") (citing *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), WL 2016 1222347, at *3 (S.D.N.Y. Mar. 24, 2016)) (internal quotations omitted); *Fenley v. Applied Consultants, Inc.*, No. 2:15-cv-259, Dkt. Nos. 64 (W.D. Pa. June 17, 2016) (approving

Berger Montague's fees and costs with a multiplier of 5.17).[20]

Here, Plaintiffs' Counsel's lodestar is reasonable, particularly for a case where Berger Montague PC conducted an extensive fact investigation, participated in vigorous arm's length negotiations overseen by a well-known wage and hour mediator, and obtained a strong settlement for the Eligible Settlement Collective Members without delay. Accordingly, to the extent the Court conducts a lodestar cross check, Plaintiffs' Counsel's lodestar supports the requested fee.

In sum, the Settlement compensates the Settlement Collective Members for a substantial portion of the amount in controversy. The Gross Settlement Amount represents between 45% and 64% percent of Plaintiffs' Counsel's exposure analysis, and is two to six times higher than Waste Management's exposure analysis. Carson Decl. ¶ 52. This is a significant recovery, which takes into account the risk that, were this litigation to proceed, it could result in no recovery for some or all of the Eligible Settlement Collective Members. Plaintiffs' Counsel's efforts have provided significant benefits to the Eligible Settlement Collective Members and the requested fees should

---

[20] *Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (approving 5.1 multiplier in wage and hour settlement and noting "[w]hile this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing Plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial"); *Beckman v. Keybank, N.A.,* 293 F.R.D 467, 481-482 (S.D.N.Y. 2013) (approving 6.3 multiplier in FLSA settlement, noting that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.") (collecting cases); *Yuzary v. HBSC Bank USA, N.A.*, No. 12 civ.3693 (PGG), 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (awarding 7.6 multiplier in $15.6 million wage and hour settlement, noting that it "falls within the range granted by courts" and "[w]hile this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing plaintiffs' counsel for achieving an early settlement, [in] particular where, as here, the settlement amount is substantial."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (approving multiplier of 5.3 in $14 million wage and hour settlement, and holding "[a] review of the case law indicates that while that figure is toward the high end of acceptable multipliers, it is not atypical for similar fee-award cases"); *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action).

be approved.

### 3. Plaintiffs' Counsel's Costs Should Be Approved

As described above, Plaintiffs' Counsel seeks reimbursement of expenses in an amount not to exceed $50,000.  In addition to being entitled to reasonable attorneys' fees, the FLSA provides for reimbursement of costs. *See* 29 U.S.C. § 216(b) ("The court [], in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."). Plaintiffs' Counsel's current costs total $46,064.68. Carson Decl. ¶ 73. These costs include reasonable out-of-pocket expenditures. *See Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8), filing, court and witness fees, (9) overtime and temp work, (1) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund *pro hac vice*" to be reasonable).

The expenses incurred in this litigation to date are described in the accompanying Declaration of Shanon J. Carson. *See* Carson Decl. ¶ 73. The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as mediation fees, court costs, travel costs, and computerized legal research. All expenses incurred were reasonable and necessary for the successful prosecution of this Litigation, and pursuant to the terms of the Settlement Agreement, Defendants do not object to the request for attorneys' fees and costs.

## V. <u>CONCLUSION</u>

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and approve the FLSA Settlement Agreement.

Date: July 3, 2019

Respectfully submitted,

/s/ Shanon J. Carson
Shanon J. Carson
Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
crodriguez@bmn.net

*Attorneys for Plaintiffs and the Settlement Collective*